UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP MARCOTTE,<br><br>　　　　　　　　　　Plaintiff,<br>v.<br>GENERAL ELECTRIC CAPITAL SERVICES, INC.,<br><br>　　　　　　　　　　Defendant. | Case No. 08cv1766 BTM (WMc)<br><br>**ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS** |

Defendant GE Money Bank, FSB ("GEMB") has filed a Motion for Judgment on the Pleadings [Doc. 54]. Plaintiff has also filed an Ex-Parte Motion to Amend the Scheduling Order [Doc. 60]. For the following reasons, the Court **GRANTS** Defendant's Motion for Judgment on the Pleadings and **DENIES as moot** Plaintiff's Ex-Parte Motion..

## I. BACKGROUND[1]

Plaintiff allegedly owes Defendants[2] a consumer debt. In early 2008, Plaintiff retained the Doan Law Firm to help him resolve his debts and file for bankruptcy. The Doan Firm sent

---

[1] The facts recited here are only the allegations in the Complaint and are not the Court's factual findings.

[2] The parties dispute whether GEMB or General Electric Capital Services, Inc. ("GECS") is the proper defendant in this matter. For purposes of this order, the Court refers to both Defendants and declines to decide the proper Defendant in this action.

Defendants a letter in January 2008, telling Defendants that the firm represented Plaintiff and to send all future communications to the firm. But in April and May of 2008, Defendants sent Plaintiff two billing statements. Plaintiff claims that by sending these two statements, Defendants violated the California Rosenthal Fair Debt Collection Practices Act ("CFDCPA"), which prohibits certain communications by creditors to debtors represented by counsel.

## II.  LEGAL STANDARD

The same standard governs both Rule 12(c) motions for judgment on the pleadings and Rule 12(b)(6) motions to dismiss. *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). When reviewing a motion to dismiss, the allegations of material fact in plaintiff's complaint are taken as true and construed in the light most favorable to the plaintiff. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). But only factual allegations must be accepted as true—not legal conclusions. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Although detailed factual allegations are not required, the factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Furthermore, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S.Ct. at 1949.

## III.  DISCUSSION

**A.  The Court Has Jurisdiction Over This Suit**

Although neither party has raised this issue, the Court *sua sponte* addresses whether it has subject-matter jurisdiction to hear this dispute and holds that it does. The Court raises the issue because this is a diversity action and Plaintiff, in his First Amended Complaint, states that the amount in controversy is $12,514.00. This is well below the $75,000 amount in controversy required by 28 U.S.C. § 1332(a). But because this case was initially filed in state court and later removed by Defendant, "jurisdiction must be analyzed on the basis of

the pleadings filed at the time of removal without reference to subsequent amendments." *Sparta Surgical Corp. v. Nat'l Ass'n of Securities Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998) (citing *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1488 (10th Cir. 1991)). Here, at the time of removal the complaint demanded $79,154.00, plus attorney fees and costs. Thus, the Court is satisfied it has jurisdiction over this case.

**B. Billing Statements Are Exempted From Liability Under the CFDCPA**

Plaintiff alleges three causes of action based on Defendants' mailing of two billing statements to Plaintiff. The three causes of action arise under the CFDCPA, California Civil Code § 1788.17. Section 1788.17 incorporates by reference certain provisions of the Fair Debt Collection Practices Act ("FDCPA"), a federal law which, like the CFDCPA, also regulates debt collectors. The three federal provisions that Plaintiff references—15 U.S.C. §§ 1692b(6), 1692c(a)(2), and 1692c(c)—generally prohibit any communications from a debt collector once the debt collector knows the consumer has an attorney or once the consumer requests in writing that the debt collector cease communications.

GEMB argues that all three causes of action fail to state a claim. GEMB first argues that the two billing statements it sent to Plaintiff should be carved out from the general prohibition against communicating with a represented debtor. For support, GEMB points to § 1788.14(c) of the CFDCPA, which prohibits any communications—except for "statements of account"—from a debt collector to a represented debtor. Cal. Civ. Code § 1788.14(c) ("No debt collector shall . . . [i]nitiat[e] communications, *other than statements of account*, with the debtor with regard to the consumer debt, when the debt collector has been previously notified in writing by the debtor's attorney that the debtor is represented by such attorney . . . .") (emphasis added). Section 1788.14(c) thus carves out billing statements from the list of prohibited communications and explicitly permits debt collectors to send "statements of account." *Id.*

But Plaintiff here does not proceed under § 1788.14(c). Instead, Plaintiff proceeds under § 1788.17 of the CFDCPA. This section incorporates by reference parallel federal

provisions of the Fair Debt Collection Practices Act ("FDCPA"), which also prohibit certain communications by debt collectors to represented debtors. Cal. Civ. Code § 1788.17 ("[E]very debt collector . . . shall comply with the provisions of Sections 1692b to 1692j" of Title 15 of the United States Code.). But those incorporated federal provisions prohibit *all* communications from debt collectors; they do not carve out billing statements. *See* 15 U.S.C. §§ 1692b(6), 1692c(a)(2), 1692c(c). Thus, § 1788.14(c) of the state statute permits debt collectors to send billing statements, while § 1788.17 and the related federal provisions do not. Based on this inconsistency, GEMB argues that the Court should harmonize these provisions by applying the exception for billing statements to both sections.

GEMB has a good explanation for why billing statements are exempted under one provision but not the other. The Truth In Lending Act ("TILA") governs credit-card companies like Defendants here. TILA requires all credit-card companies to send out monthly billing statements. 15 U.S.C. § 1637(b). And although another federal law, the FDCPA, prohibits debt collectors from sending billing statements to represented debtors, the FDCPA's definition of debt collectors does not include creditors collecting money on their own behalf. 15 U.S.C. § 1692a(6)(A). The FDCPA only applies to *third-party* debt collectors. *Id.* Thus, when a credit-card company sends out a monthly billing statement, as TILA requires, it does not violate the FDCPA's prohibitions against communicating with the debtor because the FDCPA does not apply to it. A carve out for billing statements in the FDCPA is therefore unnecessary.

A carve out for billing statements under the state law, however, *is* necessary. This is because the CFDCPA defines debt collectors to include both third-party collectors and credit-card companies collecting on their own behalf, like Defendants. Apparently in recognition of TILA's requirement that credit-card companies issue periodic billing statements, the CFDCPA carves out billing statements from its list of prohibited communications. Cal. Civ. Code § 1788.14(c). Thus, setting aside § 1788.17 for the moment, a credit-card company can send billing statements without consequence because the FDCPA's prohibitions do not apply to it and because the CFDCPA, which does apply, carves out billing statements.

Section 1788.17 complicates matters. The section was not a part of the original CFDCPA; the California legislature added it in 1999. 1999 Cal. Legis. Serv. 319 (West). Section 1788.17 makes debt collectors liable under the CFDCPA for violations of federal law by incorporating, without modification, the federal provisions prohibiting debt collectors from making any communications with represented debtors. Cal. Civ. Code § 1788.17. As discussed above, those federal provisions lack a carve out for billing statements. And therefore, when read in isolation, the plain text of § 1788.17 and the related federal provisions make Defendants liable for sending billing statements to Plaintiff.

The Court, however, does not read these statutes in isolation; it must look to their statutory structure to interpret their meaning. *See, e.g., Dep't of Navy v. Egan*, 484 U.S. 518, 525 (1988) (reviewing statutory structure to determine administrative appellate board's authority). The statutory structure here includes the requirement that credit-card companies send billing statements to their customers. *See* 15 U.S.C. § 1637(b). Even though California Civil Code § 1788.17 only adopts specified federal provisions related to debt collectors, those provisions must still be read and construed within their statutory context. In other words, by adopting the specific federal provisions, the state law also adopts their structure. Thus, in light of that structure, § 1788.17 should not be interpreted as prohibiting the mailing of billing statements.

Moreover, as mentioned above, § 1788.17 was enacted after § 1788.14(c). The later-enacted § 1788.17 may arguably effect a repeal by implication of the exception for billing statements in § 1788.14(c). However, as GEMB correctly points out, "absent a clearly expressed congressional intention," repeals by implication are disfavored. *Branch v. Smith*, 538 U.S. 254, 273 (2003). California law has an equally strong, if not stronger, presumption against implied repeals: "[A]n implied repeal should not be found unless the later statute gives "undebatable evidence" of its intent to supersede the earlier statute," and "courts are bound, if possible, to maintain the integrity of both statutes . . . ." *In re Estate of Will*, 170 Cal. App. 4th 902, 907 (2009) (citing *Western Oil & Gas Ass'n v. Monterey Bay Unified Air Pollution Control Dist.*, 49 Cal. 3d 408, 419 (1989)). The Court's task, therefore, is to

determine whether the California Legislature clearly expressed an intent to repeal the billing-statement exception in § 1788.14(c).

The Court finds no evidence of such an intent. The bill adding § 1788.17 explains that "[e]xisting law prohibits certain actions by debt collectors in connection with the collection of consumer debts. This bill would also require debt collectors to comply with specified provisions of federal law in connection with the collection of consumer debts, except as specified." 1999 Cal. Legis. Serv. 319 (West). The bill says nothing more and does not refer to billing statements.

Plaintiff likewise does not cite any evidence showing an intent to repeal. Instead, Plaintiff repeatedly argues that § 1788.17 and the related federal provisions do not have an exception for billing statements. This is obvious and misses the point. The question is whether the California Legislature intended to repeal the exception in § 1788.14(c), and the answer appears to be no.

Where there is no clear expression of legisliative intent to repeal a statute, "courts are bound, if possible, to maintain the integrity of both statutes." *Estate of Will*, 170 Cal. App. 4th at 907; *see also United States v. Maes*, 546 F.3d 1066, 1069 (9th Cir. 2008) ("Where there are two acts upon the same subject, effect should be given to both if possible."). Here, the Court can harmonize the two statutes by applying the billing-statement exception in § 1788.14(c) to § 1788.17 and its related federal provisions. This result avoids the unintended implied repeal and gives effect to the California legislature's intent to carve out billing statements from liability under the CFDCPA. The Court therefore holds that debt collectors, who are collecting money on their own behalf, may send billing statements to debtors without violating California Civil Code § 1788.17.

**C. A Prohibition Against Sending Billing Statements Would Conflict With Federal Law**

There is another basis for the Court's holding. If the Court were to apply § 1788.17 to preclude sending billing statements by a credit-card company to its customer, the statute would conflict with federal law and be preempted. The Court is obligated to construe a

statute in such a way to avoid a construction that results in invalidity.  *See Pac. Gas & Elec. v. County of Stanislaus*, 16 Cal. 4th 1143, 1152 (1997) (court must "adopt construction that best harmonizes the statute internally and with related statutes").  When state and federal law impose conflicting requirements, the federal law preempts the state law.  Here, if § 1788.17 is construed as a prohibition against sending billing statements, it would conflict with TILA's express requirement that credit-card companies issue periodic billing statements to their customers.

TILA and Regulation Z require companies that provide open-ended credit to "furnish the consumer with a periodic [billing] statement . . ." if the consumer has a balance on the account.  12 C.F.R. § 226.7; *see also* 15 U.S.C. § 1637(b).  There are no exceptions.  *See* §§ 226.7, 1636(b).  This requirement directly conflicts with any interpretation that § 1788.17 prohibits the sending of billing statements by a credit-card company to a represented debtor.

Federal law preempts the conflicting state law.  Indeed, both TILA and Regulation Z have provisions expressly preempting any conflicting state laws.  15 U.S.C. § 1610(a)(1) (inconsistent state laws preempted to the extent of the inconsistency); 12 C.F.R. § 226.28 (same).  Federal common law also has a similar preemption doctrine.  *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) ("In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law.").  "[W]here 'compliance with both federal and state regulations is a physical impossibility," the state law is preempted.  *Ting v. AT&T*, 319 F.3d 1126, 1136 (9th Cir. 2003) (citing *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43 (1963)).

Here, compliance with Plaintiff's interpretation of § 1788.17 and federal regulations is a physical impossibility.  Obviously, Defendants cannot send billing statements to Plaintiff as required by TILA and Regulation Z, and also refrain from sending them under § 1788.17.  Thus, Plaintiff's interpretation would result in the partial invalidity of § 1788.17.  But the Court's construction that § 1788.17 is modified by § 1788.14(c) does not result in any invalidity to § 1788.17.  Given the two possible constructions, the Court is bound to take the construction that does not result in § 1788.17's invalidity.  *See Pac. Gas & Elec.* 16 Cal. 4th

at 1152.

Plaintiff believes there is a way to avoid preemption and give effect to both laws. Plaintiff suggests that GEMB could send the statements to Plaintiff's lawyer. That way, Plaintiff could comply with TILA and Regulation Z's requirement to send billing statements and with § 1788.17's purported prohibition.

Plaintiff's proposal, however, is unworkable. Regulation Z requires that a creditor send statements to the "consumer." 12 C.F.R. § 226.7. And it defines a consumer as a "natural person." 12 C.F.R. § 226.2(a)(8), (a)(11); *Hess v. Citibank, (S.D.), N.A.*, 459 F.3d 837, 843–44 (8th Cir. 2006) (holding billing statement requirement under TILA and Regulation Z applies only to natural persons, not to organizations). Thus, billing statements must be sent to natural persons, like Plaintiff, and not to organizations, like Plaintiff's law firm.

Plaintiff rests must of his argument on the Official Staff Commentary ("OSC") to Regulation Z. It states that "[a]n attorney and his or her client are considered to be the same person for purposes of this regulation when the attorney is acting within the scope of the attorney-client relationship with regard to a particular transaction." 12 C.F.R. Part 226, Supp. I, OSC, 226.2(a)(22)–2 (emphasis added). Although at first blush this appears to support Plaintiff's argument, there are two reasons why it does not.

First, "[t]he TILA, like Regulation Z, also sets up a clear distinction between 'persons,' which may include an estate, and 'natural persons.'" *Hess*, 459 F.3d at 843 (citing 15 U.S.C. § 1602(c), (d)). And as discussed above, a creditor must send a billing statement to a natural person. 12 C.F.R. § 226.7 (periodic statement must be sent to "consumer"); 12 C.F.R. § 226.2(a)(11) (consumer means cardholder or "natural person"); 12 C.F.R. § 226.2(a)(8) (cardholder means "natural person"). The OSC states that "[a]n attorney and his or her client are considered to be the same *person*." It does not say that an attorney and his client are to be considered the same *natural person*. Accordingly, the OSC does not apply to the requirement to send billing statements.

Second, even assuming a lawyer and the lawyer's client may be considered the same natural person, requiring credit-card companies to send statements to law firms would violate

Regulation Z in other respects. Focusing on the latter part of the OSC, a lawyer and the client are only the same person "when the attorney is acting within the scope of the attorney-client relationship with regard to a *particular transaction*." 12 C.F.R. Part 226, Supp. I, OSC, 226.2(a)(22)–2 (emphasis added). Thus, whether a person and his lawyer are the same for purposes of Regulation Z depends on whether the lawyer represents the person on a "particular transaction." *Id.* But the distinguishing feature of open-ended credit plans like the one at issue here are repeated transactions—not a single transaction. *See* 15 U.S.C. § 1602(i); 12 C.F.R 226.2(a)(20)(i). Naturally, billing statements from credit-card companies generally contain several transactions. A credit-card company should not have to determine whether the consumer is represented with respect to all, some, or none of those transactions and issue separate billing statements to the lawyer and to the consumer.

Moreover, GEMB argues convincingly that sending billing statements to law firms instead of consumers would reduce consumer protections. Consumers have only sixty days to contest billing errors and fraudulent charges, and any delay could foreclose a consumer's ability to resolve those errors. 15 U.S.C. § 1666. Not only would sending the statements directly to law firms undercut a consumer's ability to timely contest charges, but prudent law firms would simply forward these statements to their clients as soon as possible. Thus, even under Plaintiff's interpretation, consumers with prudent lawyers would regularly receive billing statements. Not only is it nonsensical to require credit-card companies to send the statements to law firms so that the law firms can forward them to the consumer, but as discussed above, it is also an incorrect interpretation of the law.

Lastly, Plaintiff's reliance on *Castellanos v. JP Morgan Chase & Co.*, 2009 WL 1833981 (S.D. Cal. 2009) and *James v. Chase Bank USA, N.A.*, No. 08cv2220 (S.D. Cal. September 29, 2009) is misplaced. First, neither case is binding precedent on this Court. Second, neither case addresses the implied repeal or preemption arguments discussed here.

In summary, the Court concludes that billing statements are exempted under § 1788.17 for three reasons. First, § 1788.17 incorporate specific federal statutes, but those statutes must be read in the context of a statutory scheme that permits and requires credit-

1  card companies to send billing statements.  Second, § 1788.17 is modified by 1788.14(c).
2  Any other interpretation would result in an implied repeal—a result disfavored by both
3  California and federal law.  And third, Plaintiff's construction would result in the preemption
4  and partial invalidity of § 1788.17, as explained above.

5

6  **D. The Documents at Issue Here Are Billing Statements**

7  The Court must also decide whether the documents Defendants sent to Plaintiff are,
8  in fact, billing statements.  As an initial matter, the parties dispute whether the Court can
9  decide this issue on a motion to dismiss.  The Court finds that it can.

10  Whether the content of a written communication violates the FDCPA is a question of
11  law.  *See Terran v. Kaplan*, 109 F.3d 1428, 1431–32 (9th Cir. 1997) (concluding "that the
12  determination of whether a collection letter violates section 1692g [of the FDCPA] is a
13  question of law").  Plaintiff has attached the two billing statements at issue to his Complaint
14  and the Court may review them to determine whether they are billing statements as defined
15  by the relevant statutes.

16  Plaintiff refers to the documents as billing statements in his Complaint.  (Compl. ¶ 36,
17  37, 39, 49.)  But even without this admission, the contents of the documents reveal that they
18  are standard billing statements.  The Court discusses the contents below.

19  The two documents are "statements of account" under California Civil Code §
20  1788.14(c). California Civil Code § 1810.3 states what should be included in a statement of
21  account: (1) the outstanding balance, (2) transactions, (3) finance charges, (4) the interest
22  rate and charges, and the (5) the billing cycle, among other things.  The billing statements
23  at issue here contain all of this information and nothing else that would change the billing
24  statements into demand letters or efforts at debt collection.  The statements do not state that
25  any amounts are past due, and there is no indication that the documents are aimed at debt
26  collection.  Instead, one states that no payment is due, and the other states that a standard
27  minimum payment of $118 is due.  (*See* Compl. Exs. B, C.)

28  Third, the two documents are "periodic statement[s]" under TILA and Regulation Z.

*See* 12 C.F.R. § 226.7(b) (requiring ; 15 U.S.C. § 1637(b) (creditors must send "statement" to consumer). Under federal law, periodic statements require information substantially similar to that under state law: (1) the outstanding balance; (2) transactions; (3) credits; (4) interest rates, charges, and fees; (5) a grace period; (6) and the due date, among other things. *See* 12 C.F.R. § 226.7(b). Again, the billing statements here contain all of this information and nothing else that would change the billing statements into demand letters or efforts at debt collection.

In short, there is nothing that would lead the Court to believe that these two documents, which the Plaintiff refers to as billing statements, are anything but statements of account under California law and periodic statements under federal law. Because the documents at issue here are billing statements, and based on the reasoning in the preceding sections, Defendants cannot be held liable for issuing them.

**E. Plaintiff's Belief That Other Violations Occurred**

In his opposition brief, Plaintiff "firmly asserts" that discovery will reveal more violations. Plaintiff's assertion is inconsequential because only allegations of fact can support a cause of action. *See Iqbal*, 129 S.Ct. at 1949. Plaintiff has only asserted two communications by Defendants—the billing statements—and these are not actionable. Accordingly, Plaintiff's First Amended Complaint fails to state a cause of action.

**IV. CONCLUSION**

For the foregoing reasons, GEMB's Motion for Judgment on the Pleadings is **GRANTED**, and the First Amended Complaint is **DISMISSED without prejudice** in its entirety as to all Defendants.[3] Plaintiff may file a Second Amended Complaint within fourteen days of the issuance of this order. The Second Amended Complaint, if any, must allege

---

[3] Only Defendant GEMB moved to dismiss the Complaint. GECS did not join in the motion. Nevertheless, the Complaint fails to state a claim against either Defendant because the billing statements are not actionable. Defendants are advised that in the future should they want both Defendants dismissed, both Defendants must so move.

1 | actionable communications (i.e., not the sending of billing statements) or facts supporting
2 | some other cause of action.  Vague allegations of additional wrongdoing will not suffice.
3 |     Plaintiff's Ex-Parte Motion to Amend the Scheduling Order [Doc. 60] is **DENIED as**
4 | **moot**.
5 | **IT IS SO ORDERED.**
6 | DATED:  April 20, 2010

*[signature: Barry Ted Moskowitz]*

Honorable Barry Ted Moskowitz
United States District Judge